**United States District Court**
For the Northern District of California

E-FILED on    12/18/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MUSSETTER DISTRIBUTING, INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>DBI BEVERAGE INC., a Tennessee corporation,<br><br>    Defendant. | No. C-09-03112 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY ADJUDICATION AND SETTING CASE MANAGEMENT CONFERENCE<br><br>**[Re Docket Nos. 33 and 35]** |

      Plaintiff's motion for summary judgment and defendant's cross-motion for summary adjudication came on for hearing before the court on September 4, 2009.  The sole and dispositive issue raised in each motion is the legal interpretation to be given to California Business & Professions Code Section 25000.2(f)'s 40-day time period for initiating arbitration to determine compensation for the fair market value of beer distribution rights.  Having considered the papers submitted by the parties and the arguments of counsel, and for good cause appearing, the court concludes that the 40-day time period is not jurisdictional and defendant did not forfeit the right to

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY ADJUDICATIONNo. C-09-03112 RMW
TER

arbitrate by initiating arbitration two days late. Therefore, defendant's motion is granted and plaintiff's cross-motion is denied.

Mussetter Distributing is the existing distributor under a contract with Miller Brewing Company. In 2007, however, Miller and Coors Brewing Company formed a joint venture, MillerCoors LLC, and Miller assigned to MillerCoors the rights to its brands and the distribution contract at issue in this case. On September 2, 2008, MillerCoors issued a notice of intent to terminate the distributor agreement under Business and Professions Code Section 25000.2 and designated DBI Beverage as the new distributor within the territory. Section 25000.2 is a statute adopted in 2007 to provide an expedited method to determine the fair market value of the beer distribution rights to be paid to an existing distributor whenever a "successor beer manufacturer" terminates an existing distributor in favor of a successor distributor.[1] Forty-two days after Mussetter received the notice of intent to cancel, DBI sought to initiate arbitration under Section 25000.2. This litigation ensued.

The present lawsuit involves both a constitutional challenge to and the interpretation of Section 25000.2. The present motions, however, raise but a single issue: the interpretation and effect of Section 25000.2(f)'s 40-day period in which to initiate arbitration. DBI did not initiate arbitration until forty-two days after Mussetter received the notice of termination.

Under the Act, the parties were required to negotiate in good faith to determine the fair market value of the affected distribution rights. § 25000.2(d). The Act provides that if no agreement is reached within 30 days, then "the successor beer manufacturer's designee *or* the existing beer wholesaler *shall initiate arbitration* against each other to determine the issue of compensation for the fair market value of the affected distribution rights *no later than 40 days after the existing beer wholesaler's receipt of the successor beer manufacturer's notice* . . . ." § 25000.2(f) (emphasis added).

---

[1] In the terminology of the Act, the brewer is a "beer manufacturer;" a successor brewer is the "successor beer manufacturer;" the existing beer distributor is the "existing beer wholesaler;" and the successor distributor is the "successor beer manufacturer's designee." Cal. Bus. & Prof. C. §25000.2(a). For convenience, this order will sometimes refer to the "existing distributor" and the "successor distributor."

1    Mussetter argues that the 40-day period "is an absolute deadline, and thus acts as a condition
2 precedent to arbitration." Motion at 4. Mussetter further argues that because DBI failed to meet the
3 deadline, the statute does not apply and Mussetter cannot be forced to arbitrate. *Id.* citing *Wagner*
4 *Constr. Co. v. Pacific Mechanical Corp.,* 41 Cal.4th 19, 30 (2007). Mussetter thus contends that
5 DBI's failure to seek arbitration in the 40-day period prescribed by the statute constitutes a forfeiture
6 of the right to compel arbitration. Motion at 5, citing *Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307,
7 321 (1993).

8    DBI contends that the 40-day statutory period is not jurisdictional, that both parties were
9 required by statute to initiate arbitration, that arbitration is mandatory, and that interpreting the 40-
10 day period as jurisdictional so as to preclude arbitration if the deadline were not strictly met would
11 frustrate the purposes of the statute. DBI also distinguishes *Wagner* by pointing out that the case
12 merely noted that a failure to demand arbitration within a time set by statute may constitute a
13 waiver, "[b]ut the court did not conclude that statutory time limits are absolute bars to arbitration. . .
14 ." Opp. at 8. Further, the actual holding in *Wagner* is that it was up to the arbitrator to determine if
15 the statute of limitations on the underlying claims were barred by the statute of limitations. The case
16 was remanded to the trial court to determine whether the plaintiff had waived arbitration by failing
17 to request it within a reasonable time as required by the applicable statute. The court held that the
18 trial judge had erred by looking at whether the underlying claims were timely. *Wagner*, 41 Cal. 4th
19 at 1035. *Wagner* did not hold that a right to arbitrate is automatically forfeited if demand is not
20 made within a specified contractual or statutory time period.

21    DBI places a heavy emphasis on the purported mutuality of the obligation to arbitrate, for
22 example, arguing that Mussetter cannot seek to avoid arbitration because it too failed to initiate
23 arbitration within the statutory time frame. While Section 25000.2(f) provides that the existing
24 distributor or the designee shall initiate arbitration, Section 25000.2(b) identifies only the successor
25 beer manufacturer and its designees as parties who "shall comply" with the statute. Nevertheless,
26 other sections impose obligations on both the existing and successor distributor, such as Section
27 25000.2(f) requiring both to act in good faith including initiating arbitration if the parties are unable
28 to agree on the fair market value of the distribution rights.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY ADJUDICATIONNo. C-09-03112 RMW
TER                                                                3

The legislative history identified by DBI shows that there was a concern that a lack of timetables could result in drawn-out arbitration, as well as a concern that the proposed language did not "explicitly spell out that binding arbitration is the only remedy. . . ." RJN Ex. D at 4.[2] In response to this concern, however, the immediately resulting amendments were the addition of the 40-day period (along with others), but the proposed statutory language continued to provide that either the existing distributor or the designee "may" initiate arbitration. RJN Ex. D at 4. The permissive "may" did not became the mandatory "shall" until sometime later, when SB 169 was dropped and the proposed legislation was incorporated into what was then pending as SB 574. The materials submitted by the parties offer no explanation for this change in the Senate Bills or for the substantive change in proposed language.

DBI also argues that the legislative purpose underlying the 40-day time frame is to protect against protracted arbitration and not to create a jurisdictional bar to the arbitration:

> The Senate added the 40-day time period to initiate arbitration, the overall 180-day time period imposed on the arbitration, and the time periods provided for exchange of discovery in the arbitration in response to concern over the open-ended nature of the arbitration scheme and the potential for drawn out arbitration. Thus, the majority of time periods set forth in the statute, including the 40-day time period, were added specifically to ensure against protracted arbitration – not to create jurisdictional bars to arbitration. The 40-day limit is not a condition precedent, and Mussetter's intepetation of the state as including such a bar would defeat the entire purpose of the statute, i.e., to require that the parties arbitrate as quickly as possible for their own sake and for the sake of the State's consumers.

Opp. at 9 (citations to legislative history omitted).

Finally, DBI cites to *Engalla v. Permanente Medical Group*, 15 Cal.4th 951 (1997), for the proposition that a delay in commencing arbitration does not necessarily constitute a waiver. *Engalla*, however, is not directly on point since it involved an analysis of a waiver of arbitration by conduct inconsistent with the right to arbitrate, as opposed to a waiver arising from a missed statutory deadline. DBI also cites as support *Long v. Century Indemn. Co.*, 163 Cal.App.4th 1460, 1474 (2008), which holds that where a statute provides for mandatory arbitration of a dispute, even conduct that may constitute a contractual waiver cannot confer jurisdiction on the courts to hear a

---

[2] DBI's request that the court take judicial notice of certain legislative history documents (Docket No. 38) is granted.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY ADJUDICATIONNo. C-09-03112 RMW
TER                                          4

dispute that must by statute be arbitrated. Opp. at 12 n.6. While DBI is correct that *Long* does not provide a right to litigate issues that the legislature has mandated be decided by arbitration, *Long* does not suggest that a party who fails to comply with a statutory deadline may nonetheless invoke a statutory regime which it has failed to timely invoke.

Here, in contrast to *Wagner*, the statute does specify a time limit in which to act: no later than 40 days after the existing distributor's receipt of the successor manufacturer's notice. Section 25000.2(f) provides:

> If the successor beer manufacturer's designee and the existing beer wholesaler are unable to mutually agree on the fair market value of the affected distribution rights within 30 days of the existing beer wholesaler's receipt of the successor beer manufacturer's notice pursuant to subdivision (c), the **successor beer manufacturer's designee or the existing beer wholesaler** *shall initiate arbitration* against each other to determine the issue of compensation for the fair market value of the affected distribution rights *no later than* **40 days after the existing beer wholesaler's receipt of the successor beer manufacturer's notice** pursuant to subdivision (c). Upon submission to arbitration, the arbitration shall be the means of determining compensation to the existing beer wholesaler for the fair market value of the affected distribution rights, and the fair market value of the affected distribution rights shall be the purpose of the arbitration unless the parties agree otherwise.

(emphasis added). The statutory language is clear in imposing a 40-day deadline within which to commence arbitration: the parties "shall initiate arbitration . . . no later than 40 days after" receipt of the termination notice. The language appears mandatory, not permissive. This interpretation is bolstered by the fact that there is no language authorizing the 40-day deadline to be adjusted, unlike other provisions in the statute that allow the specified deadlines to be adjusted by agreement or for good cause. *See* § 25000.2(f)(7), (f)(8), and (f)(4)(B).

However, there is no consequence specified for failure to timely initiate arbitration as contrasted with the provision expressly providing that a party who does not participate in the arbitration hearings waives all rights it would have had in the arbitration. § 25000.2(f)(9). Nothing in the legislative history addresses the consequence of a party's failure to meet the 40-day deadline. This silence, coupled with the expressly articulated waiver where a party refuses to participate in the arbitration hearing, suggests that there is no consequence to a party's failure to meet the deadline absent a showing of prejudice by the delay. This seems reasonable given that both parties are required to initiate arbitration if they do not reach agreement on fair market value within the time

1  specified. Further, a party should not be able to take advantage of its own failure to comply with a
2  statutory obligation to initiate arbitration.
3       Ultimately, the court is persuaded that the delay here in initiating arbitration does not invoke
4  a forfeiture of the required arbitration procedure as there has been no showing of prejudice caused
5  by the delay. Here, the delay was *de minimis* and both parties failed to initiate arbitration in the
6  required 40-day period. The two-delay in requesting arbitration will not adversely affect the
7  statutory goal of a speedy determination of fair market value.
8       For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendant's
9  cross-motion for summary adjudication is granted, specifically that compliance with the 40-day
10 requirement in which to initiate arbitration is not a jurisdictional condition precedent to arbitration
11 and DBI did not waived its right to arbitrate by initiating arbitration two days late.
12      A case management conference is hereby set for January 8, 2010 at 10:30 a.m.

14 DATED:    12/18/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| John G. Hursh | eFilingPA@dorsey.com |
| Karen Elizabeth Wentzel | eFilingPA@dorsey.com |
| Patricia Anne Welch | eFilingPA@dorsey.com |

**Counsel for Defendant:**

| | |
|---|---|
| Elise Kathryn Sara | esara@sheppardmullin.com |
| Jonathan P. Hersey | jhersey@sheppardmullin.com |
| Mark Kenneth Slater | mslater@sheppardmullin.com |

**Counsel for Intervenor:**

| | |
|---|---|
| Jesse Frank Ruiz | jfr@robinsonwood.com |
| Alissa Brett Rubin | arubin@kslaw.com |
| Michael W. Youtt | myoutt@kslaw.com |
| Russell D. Workman | rworkman@kslaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   12/18/09                                             TER
                                                                                  **Chambers of Judge Whyte**