1

2

3

4                                                      E-FILED on    2/4/10

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12    MUSSETTER DISTRIBUTING, INC., a          No. C-09-03112 RMW
      California corporation,
13
                  Plaintiff,
14                                             ORDER RE CROSS-MOTIONS FOR
            v.                                 SUMMARY JUDGMENT
15
      DBI BEVERAGE INC., a Tennessee           **[Re Docket Nos. 58, 61, and 65]**
16    corporation,

17                Defendant.

18    ─────────────────────────────

19          Presently before the court are the motions for summary judgment by plaintiff Mussetter

20    Distributing, Inc., defendant DBI Beverage, Inc., and intervenor MillerCoors LLC.  The motions

21    have been submitted for decision on the papers without oral argument.  The court has considered the

22    papers submitted by the parties and the amicus curiae papers submitted by California Beer and

23    Beverage Distributors, and for good cause appearing for the reasons set forth below, plaintiff's

24    motion is denied, defendant DBI's motion is granted, and intervenor MillerCoors' motion is denied.

25                                    **I. BACKGROUND**

26          Mussetter Distributing is the existing distributor under a contract with Miller Brewing

27    Company.  Miller and Coors Brewing Company subsequently formed a joint venture, MillerCoors

28    LLC, and Miller assigned to MillerCoors the rights to its brands and the distribution contract at issue

1   in this case. On September 2, 2008, MillerCoors issued a notice of intent to terminate the distributor

2   agreement under California Business and Professions Code Section 25000.2 and designated DBI

3   Beverage as the new distributor within the territory. Section 25000.2 is a statute adopted in 2007 to

4   provide an expedited method to determine the fair market value of the beer distribution rights to be

5   paid to an existing distributor whenever a "successor beer manufacturer" terminates an existing

6   distributor in favor of a successor distributor. After Mussetter received the notice of intent to cancel,

7   DBI sought to initiate arbitration under Section 25000.2. This litigation ensued, challenging the

8   constitutionality and applicability of Section 25000.2.

9           A similar action was also filed by Maita Distributors, Inc. against DBI, *Maita Distributors,*

10  *Inc. v. DBI Beverage, Inc.*, Case No. C 09-02381 RMW,[1] and the court recently issued its order

11  granting in part and denying in part the parties' cross-motions for summary judgment on nearly

12  identical issues. The court sees no reason to deviate from its recent ruling on the same issues and

13  adopts that same reasoning here. A copy of the court's order November 3, 2009 Order on Cross-

14  Motions for Summary Judgment in *Maita Distributors, Inc. v. DBI Beverages Inc.*, C 09-02318

15  RMW, is attached hereto.

16          Accordingly, the court holds that California Business & Professions Code Section 25000.2

17  does not grant a successor beer manufacturer the right to cancel its contract with a distributor.

18  Intervenor MillerCoors LLC's motion for summary judgment, seeking the court's reconsideration of

19  this issue, is denied.

20          The court further holds that defendant DBI meets the statutory definition of a distributor who

21  is a successor beer manufacturer's designee under Section 25000.2. Plaintiff's motion for summary

22  judgment that DBI is not a proper manufacturer's designee under the statute is denied; DBI's cross-

23  motion for summary judgment that it is a proper "successor beer manufacturer's designee" under the

24  statute is granted.

25          The only remaining issue is whether Section 25000.2 unconstitutionally impairs plaintiff's

26  contract with MillerCoors. In *Maita*, the issue was framed in the context of whether the statute was

27

28  [1] Counsel for the parties in *Maita* are the same as counsel for the parties in the present action.
    Although the cases have not been consolidated, they have, by and large, been litigated in tandem.

1   unconstitutional because it granted a right to cancel contracts that were otherwise only terminable for

2   cause. The statute, however, provides no such right of cancellation, and thus the statute did not

3   unconstitutionally impair the contract by granting a right to cancel. The present statutory challenge,

4   by contrast, is somewhat more nuanced: here, Mussetter argues that there is an unconstitutional

5   impairment because the statute imposes an obligation to arbitrate the fair market value of the

6   affected beer distribution rights, an obligation which imposes a significant cost on Mussetter and

7   deprives Mussetter of the benefit of its bargain with MillerCoors.[2] Specifically:

8       The cost of participating in the arbitration is substantial. It includes not only the costs
        of JAMS arbitrator and forum fees, but also expert witness fees, attorney's fees and
9       the cost of management time lost from the business. None of this is part of the
        bargain struck between Mussetter and MillerCoors. When Mussetter entered into the
10      Miller Distribution Agreement, it had reasonable expectations regarding the cost-
        benefit of the agreement, the profit Mussetter would earn as a Miller distributor, and
11      the security of its ownership of the distribution rights so long as it did not give Miller
        (or its successor) "cause" under the Agreement to terminate Mussetter's distribution
12      rights. Not only did Mussetter believe it could not be forced to sell the business, it
        also did not believe it could be forced into an expensive, disruptive, formal
13      proceeding to set the value of its contract rights.

14  Motion at 3. Mussetter estimates that the cost of the arbitration will exceed $100,000. Mussetter

15  Decl. ¶9.

16      Both the United States and California Constitutions prohibit the legislature from passing laws

17  which impair the obligations in contracts. U.S. Const, art. I, § 10, Cal. Const., art. I, § 9. To

18  determine whether legislation violates the contracts clause, the court must consider the following

19  factors: (1) whether the state law has, in fact, operated as a substantial impairment of a contractual

20  relationship; (2) if the so, whether the states has a significant and legitimate public purpose behind

21  the regulation, such as the remedying of a broad and general social or economic problem; and (3) if

22  such a legitimate purposes is established, is the adjustment of the rights and responsibilities of the

23  contracting parties based upon reasonable conditions and of a character appropriate to the public

24  purposes justifying the legislation's adoption. *Energy Resources Group v. Kansas Power & Light,*

25

26  [2]      Mussetter also argues that Section 25000.2 violates its due process rights, but did not raise
        this argument in its opening brief. Instead, it raised the argument for the first time in its reply papers.
27      Reply at 3 n.4. The court need not consider arguments asserted for the first time in a reply brief.
        *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007). This rule applies with equal, if not greater,
28      force to an argument raised for the first time in a footnote in the reply. The court will not reach it
        here.

459 U.S. 400, 411-12 (1983). The same analysis applies under the state constitution's contracts clause. *Barrett v. Dawson*, 61 Cal. App. 4th 1048, 1056 (1998); *Calfarm Ins. v. Deukmejian*, 48 Cal. 3d 805, 826-31 (1989).

The threshold inquiry is whether the state law has in fact operated a substantial impairment pf a contractual relationship. *Energy Reserves Group*, 459 U.S. at 411. Total destruction of contractual rights is not necessary for a finding of substantial impairment. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 (1977). Yet, the impairment must be "substantial" or the constitutional inquiry ends. *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 245 (1978). The Supreme Court has recognized that "[m]inimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." *Id.* This issue is dispositive, and for the reasons set forth below, the court finds that Section 25000.2 has not operated a substantial impairment of Mussetter's contractual relationship with MillerCoors. Accordingly, the constitutional challenge fails, and the court need not reach the remaining two factors, *i.e.*, whether the statute has a significant or legitimate public purposes and the reasonableness of the regulation.

First, the statute does not grant or remove any rights the parties to the contract have, pursuant to the terms of the contract. As noted above, the statute does not grant MillerCoors the right to cancel the contract, nor does it provide that the distribution rights will automatically transfer to DBI upon conclusion of the arbitration. Additionally, the statute does not compel arbitration in every case in which a manufacturer desires to switch distributors but only where a successor manufacturer acquires brands and uses a different distribution network. Mussetter thus has the same contractual rights now as it did prior to the adoption of Section 25000.2, and perhaps even greater protections. For example, Section 25000.2(e) appears to obligate MillerCoors to continue supplying the affected brands during the course of the arbitration, even though under the contract, MillerCoors could immediately cease supplying the brands if termination is for cause. *See* Mussetter Decl., Exh. A at 8.1. The statute contains no exemption for a wholesaler terminated for cause, and by its terms applies to any successor manufacturer who cancels the agreement. Section 25000.2(b)(1). That

1   situation, not presented here, would present a stronger constitutional challenge, albeit one by the

2   beer manufacturer.

3         The statute does, however, require arbitration of the fair market value of the affected

4   distribution rights in one narrow instance: when a successor manufacturer acquires a brand and uses

5   (or seeks to use) a different distribution network and gives notice of its intent to cancel. In such a

6   case, the existing distributor and the designated successor must arbitrate the issue if unable to reach

7   agreement on their own. Significantly, the event that triggers the arbitration and the incurring of

8   expenses related thereto is the successor manufacturer's notice of intent to cancel, not the statute

9   itself.

10         Moreover, the statutory arbitration does not compel the transfer of distribution rights nor does

11   the statute preclude the existing distributor from bringing an action for damages arising from the

12   manufacturer's breach or for specific performance of the contract. The arbitration is limited to

13   determining the fair market value of the affected distribution rights, and maintaining the status quo

14   during arbitration. In other words, the existing distributor is largely in the same position with or

15   without Section 25000.2: faced with a manufacturer who has notified it if an intent to cancel the

16   distribution agreement, the distributor may file suit to protect its rights and recover damages for

17   breach if it believes the termination was not in accordance with the contract.[3]

18         Thus, unlike *Allied Structural Steel* and *Ross v. City of Berkeley*, 650 F. Supp. 820 (N.D. Cal.

19   1987), the legislation here does not nullify any express term of the contract, nor does it impose any

20   unexpected liability, such as the retroactive imposition of ten-year pension contribution requirements

21   in *Allied Structural Steel* or the imposition of commercial rent control in *Ross*. And, while the cost

22   of arbitration is not insignificant, it is also to some degree within the parties' control and is not

23   necessarily wholly wasted. The court notes that the parties' contract itself contemplates the

24   possibility of litigation between them. Mussetter Decl., Ex. A, ¶ 16.8 (venue selection and

25   jurisdiction) and ¶ 16.10 (jury waiver). Any such litigation arising out of the improper termination

26   of the contract would likely encompass the issue of the fair market value of the affected brands.

27

28   [3]   Plaintiff's reply papers disclose that plaintiff has already filed suit against MillerCoors, although the complaint is limited to seeking specific performance.

Mussetter has not established that the cost of arbitrating this issue is significantly different than the cost of litigating it through a trial, or that the information and evidence developed in the arbitration proceedings would not be useful or beneficial in the resulting litigation. Plaintiff has also not cited any case in which legislation requiring arbitration of a dispute has been held to violate the contracts clause. In short, Mussetter has not established that the statutory requirement to arbitrate the fair market value of the affected distribution rights substantially impairs its contract.

Additionally, in determining the extent of the impairment, the court may consider the extent to which the industry has been regulated in the past. *Allied Structural Steel*, 438 U.S. at 245; *Veix v. Sixth Ward Bldg. & Loan Assn.*, 310 U.S. 32, 38 (1940). This too weighs against finding Section 25000.2 unconstitutional. California has regulated the beer industry in various ways dating back more than five decades. Opp at 7 (noting that beer pricing regulations set forth in Section 25001-25006 date back to the early 1950s.). Moreover, existing statutes govern various aspects of the beer manufacturer/distributor relationship, including prohibiting provisions restricting the venue for any dispute to a forum outside the state, prohibiting a manufacturer from terminating a distributor for failure to meet a quota that is commercially unreasonable, and imposing liability on a manufacturer who unreasonably withholds or denies consent to a transfer or assignment of the distribution rights. Cal. Bus. & Prof. C. §§25000.6, 25000.7, and 25000.9. Thus, even if these statutes were designed to protect wholesalers from over-reaching manufacturers, as Mussetter argues, these statutes do in fact regulate the contractual relationships between beer manufacturers and wholesalers. *Id.* Further regulation in this field would not be unexpected.

Mussetter and Miller Brewing Company entered into their distribution agreement on January 1, 1999, and that the Third Amendment to the agreement was entered into, effective June 1, 2007. Mussetter Decl. Ex. A. During this time, the state legislature adopted Section 25000.6 through 25000.9, provisions that regulate the beer manufacturer/distributor's contractual relationship. Moreover, by the time of the third amendment to the Mussetter-Miller agreement in mid-20076, the sponsor of the legislation was already lobbying the legislature in support of the pending bill. *See* Holt Decl. Exh. C (March 19, 2007 letter to Florez urging support for SB 169). Significantly, the sponsor of the legislation was California Beer and Beverage Distributors, a non-profit trade

1   association representing, among others, more than 100 beer distributors in California, including

2   Mussetter. Holt Decl. ¶¶ 3, 4. Thus, Mussetter was negotiating revisions to its agreement with

3   Miller at the same time this legislation was being promoted by the trade association industry

4   association in which it was a member. The court surmises that Mussetter was aware of the proposed

5   legislation, even at the very time the third amendment to the distribution agreement was being

6   executed by the parties. Mussetter has not contended that it was unaware of the legislation or

7   opposed its adoption. Thus, in a real world sense, Mussetter can be said to have been "purchasing

8   into an enterprise already regulated in the particular to which it now objects" such that it "purchased

9   subject to further legislation upon the same topic." *Veix*, 310 U.S. at 38.

10      Accordingly, the court holds that California Business and Professions Code Section 25000.2

11  does not violate the contracts clause of the United States or California constitutions by imposing an

12  obligation on the existing beer distributors to arbitrate the issue of the fair market value of the

13  affected beer distribution rights when a successor manufacturer cancels the distribution agreement.

14  Plaintiff Mussetter Distributing, Inc.'s motion for summary judgment is therefore denied and

15  defendant DBI Beverage Inc.'s cross-motion for summary judgment is granted.

16                                **ORDER**

17      For the foregoing reasons:

18      1. Plaintiff Mussetter's motion for summary judgment is denied.

19      2. Defendant DBI's cross-motion for summary judgment is granted.

20      3. Intervenor MillerCoors' cross-motion for summary judgment is denied.

21      It appears to the court that it may now be appropriate to enter judgment, and the parties are

22  therefore directed to identify for the court all issues that remain to be resolved, if any. The parties

23  shall file and serve their statements of remaining issues on or before February 19, 2010.

24

25

26  DATED: _____2/4/10_____        *Ronald M Whyte*

27                                      RONALD M. WHYTE
                                        United States District Judge

28

**E-FILED on**   11/3/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| MAITA DISTRIBUTORS, INC. OF SAN MATEO, a California corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>DBI BEVERAGE INC., a Tennessee corporation,<br><br>            Defendant. | No. C-09-02318 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 53, 54 and 55]** |

     Presently before the court are the motions for summary judgment by plaintiff Maita Distributors, Inc., defendant DBI Beverage, Inc., and intervenor MillerCoors LLC. The motions came on for hearing before the court on October 30, 2009. Having considered the papers submitted by the parties, the amicus curiae papers submitted by California Beer and Beverage Distributors, and the arguments of counsel at the hearing on the motions, for good cause appearing, the motions are granted in part and denied in part, for the reasons set forth below.

## I. BACKGROUND

     This litigation involves the constitutionality and applicability of a portion of California's Alcoholic Beverage Control Act, specifically California Business and Professions Code § 25000.2.

1

## A. The Statute

2      Section 25000.2 was adopted in 2007 to provide an expedited method to determine the fair

3 market value of the beer distribution rights to be paid to an existing beer wholesaler (distributor)

4 whenever a "successor beer manufacturer" acquires rights to manufacture, import or distribute a

5 product and cancels any of the existing beer wholesaler's distribution rights.

6      The legislative history summarizes the proposed legislation as "establish[ing] within the

7 Alcoholic Beverage Control Act a framework for determining the fair market value of distribution

8 rights of beer brands in the event that those rights are shifted from one beer wholesaler to another

9 beer wholesaler." Analysis of Senate Bill 574 prepared for the Assembly Committee on

10 Appropriations, attached as Exh. A to Maita's Request for Judicial Notice.[1]  The purpose of the Act

11 was to "establish a simple wholesaler to wholesaler valuation process for the transfer of brands in

12 order to guarantee fair compensation and efficient transfer of beer products between competing

13 wholesalers when there is an acquisition of a brand by a successor beer manufacturer that uses a

14 different wholesaler network." *Id.*

15      The Act sets forth a framework pursuant to which the successor beer manufacture first gives

16 notice of its intent to cancel the distribution agreement, followed by a 30-day period for good faith

17 negotiations between the existing beer wholesaler and the designated successor to determine the fair

18 market value of the beer distribution rights to be paid by the designee to the existing beer

19 wholesaler, followed by mandatory private arbitration on the issue if the settlement negotiations are

20 not successful.  Section 25000.2(d) and (f).  If the settlement negotiations do not result in an

21 agreement, then arbitration is to be commenced within 40 days after the existing beer wholesaler

22 received the beer manufacturer's notice of intent to cancel.  Section 25000.2(f).  The only issue to be

23 arbitrated, unless the parties agree otherwise, is the fair market value of the distribution rights.

24 Expedited discovery is allowed, the arbitration is to be completed within 180 days, and an award

25 shall be issued within 15 days of completion of the arbitration.  The award is final and binding, but

26 the parties have the right to appeal to the superior court in the county in which the arbitration was

27

28 [1] The requests for the court to take judicial notice of the legislative history of Section 25000.2 are granted. *Hunt v.  Check Recovery Sys.  Inc.*, 478 F.  Supp.  2d 1157, 1161 (N.D. Cal.  2007); *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 544 n.4 (2007).

1  held. Section 25000.2(f)(5). If the designee distributor does not pay the award within ten business

2  days, and no appeal is filed, the existing beer wholesaler retains the distribution rights and is not

3  entitled to the award. Section 25000.2(g).[2] The existing beer wholesaler, however, has no

4  equivalent right to reject the award or decline to proceed.

5        While the statutory settlement/arbitration procedure is progressing, and up until receipt of

6  payment of the settlement amount or the arbitration award, the existing beer wholesaler is required

7  to continue to distribute the products to at least the same extent that it distributed them immediately

8  before the successor beer manufacturer acquired the rights to the products. Section 25000.2(e).

9  Both the existing beer wholesaler and the successor beer manufacturer are required to act in good

10  faith regarding the ongoing supply and distribution of the products during this time. Id. With the

11  exception of these requirements imposed on both the existing beer wholesaler and the successor beer

12  manufacturer, the exclusive focus of the statute is on the mechanism for determining the fair market

13  value of the affected distribution rights.

14        The statute has no express provision granting successor beer manufacturers a right to cancel

15  distribution agreements, nor does it have any provision addressing the actual transfer of the

16  distribution rights, such as requiring the existing wholesaler to transfer the distribution rights to the

17  designee upon receipt of timely payment of the settlement amount or award.

18  **B. The Parties**

19        Maita Distributors, Inc. of San Mateo County ("Maita") is a family-owned beer distributor.

20  It has distributed Miller and Coors beer since 1977 and 2002 respectively. Maita's contracts with

21  Miller Brewing Company and Coors Brewing Company grant Maita exclusive distribution rights in

22  Maita's territory and may only be terminated for cause. Neither contract expressly authorizes Miller

23  or Coors to terminate the distributorship agreement upon a transfer of products or brands to another

24  entity.

25        In 2008, Miller and Coors formed a joint venture, MillerCoors LLC, in order to better enable

26  them to compete with Anheuser-Busch Company, the largest brewer in the United States. Miller

27  and Coors each transferred their respective brands to MillerCoors, and MillerCoors assumed their

28

---

[2] The statute does not address who has the distribution rights during an appeal, if an appeal is filed.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER                                3

United States District Court
For the Northern District of California

obligations under the Maita distribution agreements. Thereafter, in September 2008, MillerCoors gave notice to Maita of its intent to cancel the distribution agreements and designated DBI Beverage Inc. as the successor distributor for its brands in the territory. DBI is based outside of California and had not been operating as a beer distributor in San Mateo County. Through the notice, MillerCoors sought to avail itself of California Business & Professions Code Section 25000.2.

Maita objected to MillerCoors' notice, contending that its contracts were terminable only for cause and that MillerCoors had no right to cancel them. Maita also asserted several arguments why Section 25000.2 did not apply. MillerCoors and DBI did not agree.

Therefore, with the statutory clock ticking, DBI and Maita engaged in negotiations (the good faith of which is contested by the parties) and within 40 days after Maita had received the notice of intent to cancel, DBI sought to initiate arbitration with JAMS. Maita resisted the arbitration.

State court litigation ensued, with MillerCoors and DBI seeking to compel arbitration and Maita seeking to enjoin the arbitration from proceeding and further seeking declaratory relief regarding the inapplicability and/or unconstitutionality of the statute. The state court refused either to compel or enjoin the arbitration and the private arbitration proceedings renewed, albeit with Maita participating reluctantly in order to avoid waiving its rights.

In turn, Maita dismissed the suit it had filed in San Mateo County Superior Court and filed a new lawsuit against DBI in Santa Clara County Superior Court, once again challenging the applicability and constitutionality of Section 25000.2 and seeking to enjoin the arbitration. DBI thereafter removed the action to federal court and MillerCoors intervened. The issues raised by the litigation are primarily narrowly defined issues of law – including the constitutionality of the Act and whether it applies to the Maita/MillerCoors agreements – and because these issues are not ones that will be addressed in the pending arbitration, the case was placed on an expedited schedule in order to resolve these issues prior to the commencement of the arbitration hearing in December 2009.

Presently before the court are the cross-motions for summary judgment by Maita, DBI and MillerCoors. For the most part, the issues and arguments raised in connection with each motion overlap. The parties disagree over the meaning and applicability of Section 25000.2 to the present

dispute. Maita contends that the statute does not grant a successor beer manufacturer the right to cancel agreements that are otherwise terminable only for cause; DBI and MillerCoors both contend that the statute grants the successor beer manufacturer the right to cancel. Maita next contends that if the statute does grant MillerCoors the right to cancel contracts that are otherwise terminable only for cause, then the statute is an unconstitutional impairment of contracts in violation of the Contracts Clause of both the state and federal constitutions. DBI and MillerCoors both contend that the statute does not violate the Contracts Clause because of the heavy state regulation of the alcoholic beverages industry. Maita also contends that the statute does not apply to a situation in which the existing distributor already distributes the products of the successor beer manufacturer and that it was not intended to permit a transfer of distribution rights to a distributor who is not presently a licensed distributor and is not already distributing in the applicable territory. DBI and MillerCoors disagree. Finally, DBI seeks summary adjudication on the issue that it negotiated in good faith, as required by the statute. Maita contends that DBI did not negotiate in good faith before initiating arbitration, which Maita contends is a condition precedent to initiating the arbitration.

## II. ANALYSIS

### A. **Standards for Statutory Interpretation**

The objective of statutory interpretation is to ascertain and effectuate legislative intent. The court first looks to the words of the statute to give a plain and commonsense meaning. *Hughes v. Board of Architectural Examiners*, 17 Cal.4th 763, 775 (1998). Statutes are to be enforced according to their plain meaning, without resort to legislative history or other intrinsic evidence. *Golden W. Refining Co. v. SunTrust Bank*, 538 F.3d 1233, 1238 (9th Cir. 2008) (quoting *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal.4th 358, 369 (2007) ("If the language of a statute is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature.") In ascertaining intent, the court looks first to the language of the statute, giving effect to its plain meaning. *Kimmel v. Goland*, 51 Cal.3d 202, 208-9 (1990). When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it. *DaFonte v. Up-Right, Inc.*, 2 Cal.4th 593, 601 (1992). The court is to avoid reading into the statute words that are not there. *Yucaipa Water Co. No. 1 v. Public Utilities Comm'n*, 54 Cal.2d 823,

831 (1960). The court cannot "insert what has been omitted, or omit what has been inserted." *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 545 (2007) (internal quotation omitted). If a statute is amenable to two conflicting interpretations, then courts are "compelled to impute to the statute that meaning which comports with the objective the Legislature sought to achieve." *Industrial Risk Insurers v. Rust Engineering Co.*, 232 Cal.App.3d 1038, 1042 (1991).

If these first two steps fail to reveal clear meaning, "statutes are to be given a reasonable and commonsense interpretation consistent with apparent legislative purpose and intent and which, when applied, will result in wise policy rather than mischief or absurdity." *Dyna-Med, Inc. v. Fair Employment & Housing Com.*, 43 Cal.3d 1379, 1292 (1987). Finally, wherever possible, courts are to construe a statute so as to preserve its constitutionality. *Id.* at 1387.

With these standards in mind, the court turns to the task of discerning the "plain and commonsense meaning" of Section 25000.2 in view of the issues raised by the parties.

B. **Issues Raised by the Parties**

1. *Does Section 25000.2 Apply Where the Existing Distribution Agreement is Terminable Only For Cause? Yes, But Section 25000.2 Does Not Provide a Right to Cancel.*

The first issue in dispute is whether Section 25000.2 applies to beer distribution contracts that, by their terms, are only terminable for cause. Maita contends that Section 25000.2 does not apply to such agreements and argues that nothing in the statute or legislative history indicates an intent to deprive distributors of their contractual rights. Maita also argues that the statute is unconstitutional if it permits cancellation of for-cause contracts and should therefore be construed to avoid such unconstitutionality.

DBI contends that the statute does not distinguish between contracts that are terminable for cause and contracts that may be terminated at will and provides for an independent termination right by a successor manufacturer, contingent on the terminated distributor being compensated. DBI Opp. at 8. Similarly, MillerCoors argues that not only does the statute apply to contracts that are terminable only for cause but it affirmatively grants successor beer manufacturers the right to cancel existing distribution agreements and to designate other distributors to replace the existing

1    distributor.   California Beer and Beverage Distributors ("CBBD"), as amicus curiae, asserts that the

2    statute applies, regardless of whether the distribution contract is terminable for cause or at will, but it

3    does not grant a cancellation right.

4          As a matter of statutory interpretation, there is nothing within the text of Section 25000.2 or

5    in its legislative history from which the court could reasonably conclude that the statute applies only

6    to contracts that are terminable at will.  Section 25000.2(b) states that a "successor beer

7    manufacturer that acquires the rights to manufacture, import, or distribute a product, and who

8    cancels any of the existing beer wholesaler's rights to distribute the product, shall comply with this

9    section."  Thereafter, the statute sets forth the procedures for giving notice of intent to cancel, good

10   faith negotiations regarding the fair market value of the affected distribution rights, and arbitration

11   of the fair market value of such distribution rights.  Section 25000.2(c) et seq.  There simply is no

12   provision excluding contracts that are terminable only for cause nor limiting application of the

13   statute to contracts terminable at will.  There is similarly nothing within the legislative history that

14   addresses the issue.  The court cannot read into the statute words that are not there. *Yucaipa Water*

15   *Co. No. 1*, 54 Cal. 2d at 831; *Doe*, 42 Cal. 4th at 545.

16         Accordingly, Section 25000.2, by its terms, applies any time a successor beer manufacturer

17   acquires a product and gives notice of its intent to cancel the distribution rights of the existing beer

18   wholesaler, regardless of whether the distribution agreement is terminable at will or only for cause.

19   However, the statute's limited purpose is to provide the means for determining the fair market value

20   of the existing beer distributorship.  It does not grant a successor beer manufacturer the right to

21   terminate existing contracts.

22         Each party points to the same statutory language as supporting its position: the language in

23   Section 25000.2(b)(1) that "[a]ny successor beer manufacturer that acquires the rights to

24   manufacture, import, or distribute a product, <u>and who cancels any of the existing beer wholesaler's</u>

25   <u>rights</u> to distribute the product, shall comply with this section." *Id.* (emphasis added).  No other

26   portion of the statute approaches the issue.

27         MillerCoors and DBI's contention that Section 25000.2 does provide an unqualified right to

28   terminate a distributorship reads more into the statute than it provides.  MillerCoors argues that

United States District Court
For the Northern District of California

1   Section 25000.2 "must create an independent right of cancellation that is based solely upon the

2   successor beer manufacturer's status as a successor beer manufacturer." MillerCoors' motion at 8.

3   MillerCoors argues that if a successor beer manufacturer acquires the right to manufacture or import

4   a product, then it may cancel the existing beer wholesaler's distribution rights by following the

5   procedures in Section 25000.2. *Id.* The language of the statute, however, does not support

6   MillerCoors' interpretation, and nothing in the legislative history suggests that the legislature

7   intended, or even contemplated, granting successor beer manufacturers the right to terminate

8   distribution agreements that would otherwise only be terminable for cause.

9       Maita contends that Section 25000.2 only applies if the existing distributorship is terminable

10  at will but not if cause is required. Maita Motion at 5. There is no language in the statute, nor

11  anything in the legislative history, however, that supports Maita's contention that Section 25000.2

12  applies only to cases where a successor beer "rightfully" cancels the distribution agreement.

13      CBBD, as amicus curiae, contends that Section 25000.2 does not itself authorize

14  terminations of any type and argues that the statute's application to a dispute between an existing

15  wholesalers and the successor beer manufacturer is wholly separate from whether or not the

16  termination was consistent with or inconsistent with the particular distribution agreement. Amicus

17  at 3-4. It argues that Section 25000.2 "sets forth procedures in the event of cancellation, but it does

18  not *authorize* cancellation at all." CBBD brief at 3.

19      The court agrees with CBBD. Nothing in the statutory text expressly grants a right of

20  cancellation; nothing in the statutory text limits its application to contracts that are terminable at will

21  or rightfully canceled. Section 25000.2(b)(1) speaks only to a successor beer manufacturer "who

22  cancels" any existing beer wholesaler's distribution rights. Subsequent sections set forth the

23  procedures to be followed with regard to instigating arbitration and arbitrating the issue of the fair

24  market value of the distribution rights. Had the legislature intended to grant a right to cancel, it

25  easily could have done so. It did not, however, and the court cannot read into the statute words that

26  are not there. *Yucaipa*, 54 Cal.2d at 831.

27      Moreover, nothing in the legislative history addresses the granting of a right to cancel

28  existing beer distribution agreements. DBI points to one letter in the legislative history in which

CBBD emphasized reduction of beer brand transfer litigation as a purpose underlying the proposed statute. The letter to the Governor's Deputy Legislative Secretary specifically noted California's increase in beer distributor litigation as a result of consolidation in the industry and stated that:

> SB 574 takes the brewer out of the process and effectively out of litigation, and allows competing distributors, who are not and never will be in a contract with each other, to reach a timely settlement. SB 574 will end brand transfer litigation to the economic benefit of both brewers and California beer distributors and stop the economic loss caused by time consuming and costly litigation. That is why both brewers and beer distributors are united in their strong support of SB 574.

August 9, 2007 letter, attached as Ex. B to DBI's Request for Judicial Notice. The letter also attached a list of the six brand transfer lawsuits that had been filed in 2006, noting that this represented a 600% "surge" in beer distributor litigation over the previous level of less than one per year. *Id.* From this, DBI argues that the Act must grant a right of cancellation, otherwise the purpose of the Act would be undermined and no successor beer manufacturer would choose to follow Section 25000.2 if the terminated distributor could still bring an action to enforce its contract with the manufacturer. DBI's Response to CBBD's Amicus Brief at 1.

However, this snippet of legislative history—a letter from the bill's sponsor after passage of the bill and before the bill was signed into law by the Governor—is not sufficient to establish a legislative intent to provide successor beer manufacturers with a right to cancel existing contracts. More importantly, it cannot be used to create language in the statute that does not exist. *Doe*, 42 Cal. 4th at 545 (quoting prior case law that "a court ... may not rewrite the statute to conform to an assumed intention which does not appears from its language").

Instead, the express provisions of the Act and the legislative history underlying it reveal that Section 25000.2 is quite focused on only one issue: providing an expedited method to **determine the fair market value of the beer distribution rights** to be paid to an existing beer wholesaler whenever a successor beer manufacturer acquires rights to manufacture, import or distribute a beer product and seeks to change distributors; nothing more, nothing less. The legislation does not address how such contracts are to be cancelled, does not grant any right to cancel, nor does it even direct that the distribution rights are to be transferred upon payment of what is determined to be the fair market value of the distribution rights. The only issue Section 25000.2 addresses is how the fair

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER
9

market value is to be determined. All else is left to the parties, their contracts, and their legal rights.

This appears to be an unusual case in which the legislature focused on providing a solution to so narrow an issue—providing a means to efficiently determine the fair market value of beer distribution rights to be paid to an existing distributor—that it failed to address the problem in a sufficiently thorough context. In any event, the court cannot, as a mater of statutory interpretation, read into the statute a right to cancel existing contracts that does not exist in the statute and is not clearly supported by the legislative history.

Accordingly, the court finds that Section 25000.2 applies any time a successor beer manufacturer cancels a distribution agreement with an existing wholesaler and designates a successor distributor for the territory, but it does not grant a right of cancellation to the successor beer manufacturer. A successor beer manufacturer is bound by the terms of the contracts it has assumed, and if a contract may only be terminated for cause, then a successor beer manufacturer who cancels it without cause does so at its peril.

**3.** ***Does the Application of Section 25000.2 to the Maita Contracts Substantially Impair Those Contracts in Violation of the Contracts Clause? No.***

Maita argues that if Section 25000.2 is applicable to its distribution contracts, the statute is unconstitutional under the Contracts Clause because it substantially impairs the contracts. DBI and MillerCoors contend that there is no unconstitutional impairment because of the heavy regulation of the beer industry. The parties' arguments, however, are predicated on the erroneous assumption that if the statute is applicable it grants a right to cancel the contract. As discussed above, the statute does not grant MillerCoors the right to cancel Maita's distribution agreements and therefore the statute does not unconstitutionally impair the contracts by doing so.[3]

**4.** ***Is DBI a Proper "Successor Beer Manufacturer's Designee" Under Section 25000.2? Yes.***

---

[3] If the statute were interpreted to grant a right to cancel contracts that were otherwise terminable only for cause, it would appear that this would result in an unconstitutional impairment of contracts.

1   Maita seeks declaratory relief that the statute does not apply where a successor beer

2   manufacturer designates a successor beer distributor who does not already do business in the

3   existing territory to take over the distribution rights from an existing distributor. Complaint ¶12(b).

4   DBI seeks summary adjudication that it qualifies as a proper "successor beer manufacturer's

5   designee" under Section 25000.2.

6   DBI notes that the statute contains an express definition of "successor beer manufacturer's

7   designee" and that it meets the definition. The designee is defined as "one or more distributors

8   designated by the successor beer manufacture to replace the existing beer wholesaler, for all or part

9   of the existing beer wholesaler's territory, in the distribution of the product." §25000.2(a)(9). DBI

10  argues that it is a distributor, selected by MillerCoors, as part of its new distributor network and thus

11  that it is a proper designee under Section 25000.2. DBI's Motion at 7.

12  Maita argues that DBI is not a proper "successor beer manufacturer's designee" under the

13  statute. Specifically, it contends that "in order for DBI to be a proper designee and the statute to

14  apply, DBI must be a 'distributor' under California law who can 'replace the existing beer

15  wholesaler, for all or part of the existing beer wholesaler's territory.'" Maita Opp. at 12, citing

16  Section 25000.2(a)(9). Maita argues that a beer distributor under California law must be licensed in

17  California[4] and that because DBI is not licensed, it does not qualify as a distributor who can replace

18  Maita in San Mateo County.

19  Maita also argues that the statute was not intended to apply in the present context.

20  Specifically, Maita points to statements in the legislative history that Section 25000.2 "is intended to

21  establish a simple wholesaler to wholesaler valuation process for the transfer of brands in order to

22  guarantee fair compensation and efficient transfer of beer products between **competing wholesalers**

23  where there is an acquisition of a brand by **a successor beer manufacturer who uses a different**

24  **wholesaler network.**" Maita Opp. at 11, quoting legislative history (emphasis added by Maita).

25

26  [4] Maita's citation to multiple sections of the Business and Professions Code relating to various
    aspects of licensing requirements applicable to beer distributors is not persuasive. Maita Opp. at 12
27  n.8. These provisions do not define "distributor" as one who is licensed to distribute beer in the
    State. To be sure, a distributor will be required to comply with all applicable California licensing
28  laws before commencing distribution of beer within the applicable territory, but an unlicensed
    distributor is still a distributor.

From this, Maita argues that "Section 25000.2 was intended to rectify the situation where a beer manufacturer, because of its acquisition of a new brand, would be supplying different products to competing wholesalers in the same territory. It was not intended to be used by a manufacturer to avoid its contractual obligations to existing distributors in order to award new territory to a large wholesaler." *Id.* Maita further argues that this legislative purpose is not served where the designee is not presently a competing distributor within the territory and where the existing wholesaler already is a consolidated wholesaler with distribution rights to all affected brands.

Maita's argument is creative, but ultimately unavailing because the statute cannot be reasonably construed in the manner Maita suggests. First, Maita's argument is not supported by the statutory language. The statute requires only that the successor beer manufacturer designate one or more distributors to replace the existing wholesaler for all or part of the territory. Although Section 25000.2 does not define the term "distributor," it does use the term interchangeably with "wholesaler," a term more generally used within the statutory scheme.[5] Specifically, 25000.2(g) states that the existing beer wholesaler "shall remain the distributor of the product" if it does not receive the payment from the designee. Thus, a "distributor" under Section 25000.2 is a "wholesaler." Section 23021 defines "wholesaler" as "every person other than a manufacturer ... who is engaged in a business as a ... wholesale merchant, dealing in alcoholic beverages, in an area within the United States ... or within a foreign country having common boundaries with any state of the United States." The term "wholesaler" is not limited to those within California nor is it limited to one who is licensed to distribute in California. Accordingly, the term "distributor" is also not so limited. The legislature may not have envisioned a situation in which a successor manufacturer would assume contracts under which the existing distributor would effectively be a consolidated distributor within that territory and yet would desire to change distributors as part of a nationwide plan to consolidate its distribution network. There is no clear indication, however, that the

---

[5] The plain and commonsense meaning of "distributor" is "wholesaler." The terms are synonymous. *See* Dictionary.com (defining "distributor" is "a wholesaler who has exclusive rights to market within a given territory, the goods of a manufacturer or company"), *http://dictionary.reference.com /browse/distributor*; Merriam-Webster Online Dictionary (defining distributor as "one that markets a commodity; *especially*: wholesaler"), *http://www.merriam-webster.com/dictionary/distributor*.

legislature sought to exclude such a situation. Most importantly, the statutory language does not support Maita's argument.

There appears to be no genuine issue of material fact that DBI meets this definition of wholesaler; accordingly, DBI qualifies as a "distributor" who may be the designee of a successor beer manufacturer under Section 25000.2. DBI is entitled to summary adjudication in its favor that it is a proper designee under Section 25000.2.

### 5. *Is DBI Entitled to Summary Adjudication That It Negotiated in Good Faith In Compliance With Section 25000.2? No, Material Facts Are in Dispute.*

The final issue presented is whether DBI negotiated in good faith in the 30-day period following MillerCoors' notice of intent to cancel Maita's distribution rights as required by Section 25000.2. Maita's Complaint asserts that under Section 25000.2, good faith negotiation is a condition precedent to the right to arbitrate and that DBI's failure to negotiate in good faith precludes the arbitration from proceeding. DBI seeks summary adjudication that it negotiated in good faith as required by Section 25000.2. Maita contends that it did not. Both sides support their positions with declarations. Maita's evidence and argument reduce to the assertion that DBI did not negotiate in good faith because Maita did not receive any offer to purchase the distribution rights within the first thirty days. DBI submits evidence that it did extend an offer, which Maita apparently did not receive and DBI resubmitted. Material facts are in dispute, and summary adjudication cannot be granted on this issue.

### III. CONCLUSION AND ORDER

As set forth more fully above, California Business and Professions Code Section 25000.2 has a narrow scope, setting forth a procedure for determining the fair market value of distribution rights when a successor beer manufacturer acquires brands, gives notice of its intent to cancel an existing distribution agreement, and designates a successor distributor. It does not, however, grant a right to cancel existing contracts, and any successor beer manufacturer who cancels a distribution agreement in violation of the terms of such agreement is not absolved of liability for such breach of contract.

1    Because the statute does not grant a right to cancel contracts that are otherwise terminable only for

2    cause, the statute also does not unconstitutionally impair such contracts by doing so.

3

4

5           Accordingly, the court grants and denies the parties' motions for summary judgment as

6    follows:

7           1.    Maita's motion for summary adjudication that Section 25000.2 does not override

8                 Maita's existing contracts and allow MillerCoors LLC to terminate contracts that

9                 cannot be terminated except for cause is GRANTED;

10          2.    Maita's motion for summary adjudication that Maita cannot be forced to arbitrate the

11                value of its distribution rights pursuant to Section 25000.2 is DENIED;

12          3.    DBI's motion for summary adjudication that it is a proper successor beer manufacturer's

13                designee under Section 25000.2 is GRANTED;

14          4.    DBI's motion for summary adjudication that it negotiated the purchase of the affected

15                distribution rights in good faith is DENIED;

16          5.    MillerCoors' motion for summary adjudication that Section 25000.2 applies when the

17                existing beer wholesaler already distributes all of the successor beer manufacturer's

18                brands is GRANTED; and

19          6.    MillerCoors' motion for summary adjudication that Section 25000.2 applies to contracts

20                that are terminable for cause and to contracts terminable at will is GRANTED, although

21                as noted elsewhere in this order, Section 25000.2 does not grant successor beer

22                manufacturers a right to cancel existing distribution agreements.

23

24
                                                    *Ronald M Whyte*
25   DATED:     ____11/3/09_____              _____
                                                     RONALD M. WHYTE
26                                                   United States District Judge

27

28

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER                                          14

Attachment to 2/4/10 Order in C09-3112 RMW

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

John G. Hursh                  eFilingPA@dorsey.com
Karen Elizabeth Wentzel        eFilingPA@dorsey.com
Patricia Anne Welch            eFilingPA@dorsey.com

**Counsel for Defendant:**

Elise Kathryn Sara             esara@sheppardmullin.com
Jonathan P. Hersey             jhersey@sheppardmullin.com
Mark Kenneth Slater            mslater@sheppardmullin.com

**Counsel for Intervenor:**

Jesse Frank Ruiz               jfr@robinsonwood.com
Alissa Brett Rubin             arubin@kslaw.com
Michael W. Youtt               myoutt@kslaw.com
Russell D. Workman             rworkman@kslaw.com

**Counsel for Amicus:**

Brian C. Rocca                 brian.rocca@bingham.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   2/4/10                            TER
                                        **Chambers of Judge Whyte**